UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONNIE LEE ANDERSON,

        Petitioner,

v.                                                        Case No. 08-11367

MARY BERGHUIS,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Ronnie Lee Anderson filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 31, 2008.  The habeas petition challenges Petitioner's state convictions for assault with intent to commit murder, Mich. Comp. Laws § 750.83, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Petitioner challenges the fairness of his trial and the trial court's calculation of, and departure from, the state sentencing guidelines.

Respondent urges the court to deny the habeas petition on grounds that Petitioner's claims are not cognizable on habeas review, are procedurally defaulted, or were adjudicated in accordance with clearly established federal law in state court. Having reviewed the pleadings and record, the court agrees that Petitioner is not entitled to habeas relief and will deny his petition.

**I. BACKGROUND**

The charges in this case arose from an assault on Carl Mack in his garage in Macomb Township.  The assault occurred about 7:00 a.m. on February 28, 2005, while Mr. Mack was preparing to take his girlfriend's children to school.  Mr. Mack entered his garage to start his truck when a masked man entered the garage and began shooting at Mr. Mack.  The encounter lasted less than one minute and left Mr. Mack with three gunshot wounds, including one in his head.

After a brief investigation, Petitioner was charged with the assault, and the case proceeded to trial.  The prosecution based its case against Petitioner on evidence found at the scene and on the testimony of Mr. Mack, his neighbors, police officers, and others.  The prosecution's theory of the case was that Petitioner attacked Mr. Mack due to his jealousy over Petitioner's ex-girlfriend's new romantic relationship with Mr. Mack.  Petitioner denied shooting Mr. Mack.  He testified that he was riding around with a friend in Sterling Heights between 1:00 a.m. and 7:00 a.m. on the morning of the shooting and that he arrived home about 7:45 a.m. or 8:00 a.m.

On December 6, 2005, following trial, a Macomb County Circuit Court jury found Petitioner guilty of assault with intent to commit murder, Mich. Comp. Laws § 750.83, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  The trial court sentenced Petitioner to concurrent terms of two years imprisonment for each of the felony-firearm convictions, followed by concurrent terms of 30-to-70 years imprisonment for the assault and 95 months-to-20 years' imprisonment for the first-degree home invasion.

In an appeal of right to the Michigan Court of Appeals, Petitioner asserted the following three claims: (1) the trial court erred in allowing the prosecutor to admit "other acts" evidence, (2) prosecutorial misconduct denied Petitioner a fair trial, and (3) the trial court improperly scored offense variables 7 and 10 and departed from the sentencing guidelines without substantial and compelling reasons. Because the Michigan Court of Appeals was not persuaded by these arguments, the Court affirmed Petitioner's convictions and sentence in an unpublished per curiam opinion. The Michigan Court of Appeals held that (1) the trial court did not abuse its discretion when it admitted "other acts" evidence, (2) the prosecutor's conduct was not prejudicial and did not deprive Petitioner of a fair trial, and (3) the evidence supported the trial court's conclusion regarding offense variable 7, and Petitioner's other sentencing claims were waived by his failure to assert any argument in support of those claims. See *People v. Anderson*, No. 268463, 2007 WL 1791701, at *1-3 (Mich. Ct. App. June 21, 2007).

Petitioner raised the same issues and one new claim of prosecutorial misconduct in an application for leave to appeal to the Michigan Supreme Court. Petitioner's new claim alleged that Petitioner was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law by the prosecutor's closing argument, which consisted of unsupported evidence. On November 29, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Anderson*, 741 N.W.2d 376 (Mich. 2007).

Petitioner filed his habeas corpus petition in this court on March 31, 2008. He lists the same three grounds for relief that were sought in the Michigan Court of Appeals:

I. The trial court's unfettered allowance of the other uncharged incident or confrontation between [Petitioner] and Mr. Mack was an abuse of discretion which denied [Petitioner] his state and federal constitutional rights to a fair trial.

II. [Petitioner] was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through misconduct of the prosecutor which consisted of the injection into the proceedings of unsupported evidence from outside the record.

III. The trial court's assessment of fifty points for OV-7 [excessive brutality] and fifteen points for OV-10 [predatory conduct], and its departure from the sentencing guidelines range, were errors necessitating reversal and resentencing.

(Pet. at 4, 6, 7, Attach. B.)  Respondent urges the court to deny the habeas petition on the grounds that Petitioner's claims are not cognizable on habeas review, are procedurally defaulted, or were adjudicated in accord with clearly established federal law in state court.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies here because Petitioner filed his habeas petition after April 24, 1996, the effective date of AEDPA.  *Gillard v. Mitchell*, 445 F.3d 883, 889 (6th Cir. 2006) (citing *Frazier v. Huffman,* 343 F.3d 780, 787 (6th Cir. 2003)), *cert. denied*, 549 U.S. 1264 (2007).  Section 2254(d) of Title 28, United States Code, provides the standard of review for evaluating petitions for the writ of habeas corpus by petitioners convicted in state court.  The statute states in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

4

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The writ may issue only if one of the two conditions listed in § 2254(d) are satisfied. *Williams v. Taylor,* 529 U.S. 362, 412 (2000).

In *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), the Court of Appeals for the Sixth Circuit recognized *Williams* as the controlling Supreme Court case on "the standard of review that a federal habeas court must apply under § 2254(d)." The Sixth Circuit discussed the two conditions listed in 28 U.S.C. § 2254(d)(1) -- the "contrary to" clause and the "unreasonable application" clause – and summarized *Williams* in pertinent part:

> The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." [*Williams,* 529 U.S. at 412-13]. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision[s] but unreasonably applies that principle to the facts of the prisoner's case." [*Williams,* 529 U.S. at 413].

*Harris,* 212 F.3d at 942.

A federal habeas court may not issue the writ simply because it concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Williams,* 529 U.S. at 411. The state-court decision must also be unreasonable. *Id.* Section § 2254(d) provides a "highly

5

deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n. 7, and "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Another condition that, if satisfied, would permit the granting of a writ of habeas corpus is found in 28 U.S.C. § 2254(d)(2). A petition may be granted if the federal court finds that the state court made a decision based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Section § 2254(e)(1) of Title 28 also requires that a federal court reviewing a petition for writ of habeas corpus give deference to the factual findings of the state court:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Bailey v. Mitchell*, 271 F.3d, 652, 656 (6th Cir. 2001) (recognizing that state courts' factual findings are presumed correct by federal courts).

A strict standard is used to determine the prejudicial effect of constitutional error in state court trials. Under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), a trial error can be found harmless unless it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This "substantial and injurious effect" standard is a high threshold requirement for petitioners to satisfy, and as a result, the *Brecht* standard further supports the great deference that federal courts give to state court rulings.

"[E]rrors in [the] application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703

F.2d 959, 962 (6th Cir. 1983) (citing *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976), and *Reese v. Cardwell*, 410 F.2d 1125 (6th Cir. 1969)).  But, if a state court's "evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001), and *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).  The Due Process Clause, however, has limited operation beyond the specific guarantees enumerated in the Bill of Rights.  *Dowling v. U.S.*, 493 U.S. 342, 352 (1990).  Therefore, the Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Id*.

### III.  DISCUSSION

#### A.  "Other Acts" Evidence

Petitioner first contends that the trial court abused its discretion and deprived him of a fair trial by permitting the prosecutor to admit "other acts" evidence.  The factual basis for this claim was explained by the Michigan Court of Appeals:

The trial court permitted Carl Mack to testify about a previous encounter that occurred between him and defendant.  Mack said defendant approached him and Christine Quinn with a stick in his hands, as Mack and Quinn walked to Quinn's apartment after a date.  Defendant said "hey, man, that's my wife," and walked toward Mack and Quinn.  Defendant did not leave the scene until Mack pulled out a weapon.  The other bad[1] acts evidence was

---

[1] Sic. The focus of Michigan Rule of Evidence 404(b)(1), at issue here, is not upon "bad" acts –"bad" appears nowhere in the Rule– but upon the purpose for which evidence of "other crimes, wrongs, or acts" is offered.  Such acts are "not admissible to prove the character of a person in order to show conformity therewith," but "may . . . be admissible for other purposes." MRE 404(b).  It can be stipulated that just about all "crimes" and "wrongs" are "bad," but there is no *requirement* that the proffered acts be "bad" in order to qualify under this Rule.  The acts must simply be not otherwise prohibited, e.g., character/conformity evidence, while also capable of proving something

>admitted to show that defendant's motive for shooting Mack was jealousy over Quinn's new relationship with Mack. Although Quinn claimed that she and defendant were never married, defendant and Quinn dated for several years, and defendant socially referred to Quinn as his wife.

*People v. Anderson*, No. 268463, 2007 WL 1791701, at *1.

The trial court determined that evidence of the incident involving Petitioner, Mr. Mack, and Ms. Quinn was more probative than prejudicial. The trial court noted that the evidence was relevant to a prior relationship and was the only time that Mack had an opportunity to meet Petitioner in person.

The Michigan Court of Appeals found that the trial court did not abuse its discretion when it admitted evidence of the prior incident with Mr. Mack because the evidence was admitted for a proper purpose: to establish Petitioner's motive for shooting Mack. The Court of Appeals stated that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

Petitioner claims that, even if the incident were relevant to the issue of identity, the details of the encounter between Mr. Mack and him were not relevant and should have been limited to testimony that Mr. Mack saw Petitioner on a previous occasion and exchanged words with him. (Pet. at 12-15, Attach. C). According to Petitioner, evidence that he possessed a makeshift weapon during the prior incident with Mack suggested to the jury that, if he "w[as] violent before, or was an aggressive and hostile person and had a propensity to commit such acts, [he] was more likely to have been the perpetrator in the instant case." (Pet. at 15, Attach. C).

---

of significance to an issue in the case.

Under AEDPA, a federal court can grant habeas relief to petitioners only if the state court ruling was either "an unreasonable determination of the facts" or "contrary to" or "an unreasonable application" of "clearly established Federal law." 28 U.S.C. § 2254(d). Based on this statutory limitation, Petitioner's claim lacks merit because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh,* 329 F.3d at 512. Therefore, the state court's rejection of Petitioner's claim cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id.* at 512-13.

Even if Petitioner's claim were cognizable on habeas review, the contention that he was denied a fair trial fails under *Brecht,* which requires that a state court error be found harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623. There was no "substantial and injurious effect or influence in determining the jury's verdict" in this case because, as the state court of appeals recognized,

> the trial court properly instructed the jury to only consider the evidence of defendant's prior bad acts for the limited purpose of deciding whether defendant had a reason to commit the crime. The court also instructed the jury that it must not use the prior bad acts evidence for any other purpose and that it must not convict defendant because it thinks he is guilty of other bad conduct. These limiting instructions were sufficient to assuage the danger of unfair prejudice.

*People v. Anderson*, No. 268463, 2007 WL 1791701, at *2; *see also* Trial Tr., vol. 5 at 42, Dec. 6, 2005 (the trial court's jury instruction on "other acts" evidence).

Petitioner's argument that the jury likely treated the prior incident as propensity evidence fails to address the "invariable assumption of the law that jurors follow their

9

instructions." *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (quoting *Francis v. Franklin,* 471 U.S. 307, 325 n.9 (1985)). Petitioner does not make any argument as to why the curative instructions to the jury were not sufficient to alleviate any prejudice from the evidence against him. The court gave sufficient curative instructions to the jury, and it is presumed that the jury followed the instructions as given. *See id.*

Accordingly, the court finds that Petitioner's claim is not cognizable on habeas review and, even if it were cognizable, the alleged constitutional error was harmless, given the trial court's jury instruction on "other acts" evidence. Therefore, the court will deny relief for Petitioner's challenge to the introduction of "other acts" evidence.

### B. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor's misconduct deprived him of a fair trial. Specifically, Petitioner alleges that the prosecutor injected his own testimony into the trial when he asked Petitioner whether he remembered Christine Quinn (Petitioner's former girlfriend) telling him on the day before the shooting that she did not love him. (Trial Tr., vol. 4 at 195, Dec. 2, 2005).

The trial court overruled defense counsel's objection to the prosecutor's question, and the Michigan Court of Appeals rejected Petitioner's claim of prosecutorial misconduct, finding that:

> [t]he prosecutor's inquiry was not prejudicial because defendant denied that a conversation of that nature occurred, the prosecutor moved on and did not revisit the issue . . . . [E]vidence had already been presented showing that Quinn and defendant were no longer romantically involved and that defendant was jealous of Quinn's new relationship with Mack . . . , which was likely the motive for defendant's shooting . . . .

> In any event, the trial court instructed the jury that "the lawyers['] questions to witnesses are not evidence." The trial court instructed the jury to "only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge."

*People v. Anderson*, 2007 WL 1791701, at *2-3.

"On habeas review, claims of prosecutorial misconduct are reviewed deferentially." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (citing *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)). Therefore, the burden lies with Petitioner to prove that the prosecutor's question violated a constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The prosecutor's question must be "so egregious . . . as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979) (citing *Donnelly*, 416 U.S. 637).

The complained-of misconduct "must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (citing *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir. 2005)), *cert. denied*, 549 U.S. 1255 (2007). To determine whether a prosecutor's remarks were flagrant, courts must consider "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates,* 402 F.3d at 641.

"Questions posed by an attorney to a witness does not make the attorney a witness against the accused." *Malone v. Sherman*, No. 05-10151, 2008 WL 2949227, at *14 (E.D. Mich. July 29, 2008) (citing *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir.

2005)). Even if the jury improperly learned from the prosecutor's question that Christine Quinn had told Petitioner she did not love him, the prosecutor's question did not amount to flagrant misconduct for the following reasons.

First, although the prosecutor's question was deliberately made, it was an isolated question. *See Bates*, 402 F.3d at 641. Additionally, Petitioner responded merely that he did not remember Quinn telling him she did not love him. He claimed that he did not know what the prosecutor was talking about. (Trial Tr., vol. 4 at 195-96, Dec. 2, 2005). Second, there is little likelihood that the prosecutor's question to Petitioner "tended to mislead the jury." *Bates,* 402 F.3d at 641. The complained-of question was asked after the prosecutor presented testimony on the nature of Petitioner's former relationship with Quinn. Thus, the prosecutor's disputed question was not the only basis for establishing a motive; this was also accomplished through Quinn's testimony. (Trial Tr. vol. 3, at 20, Dec. 1, 2005). Because there was other evidence to support the theory of jealousy, there is little chance that the jury was misled by the prosecutor's question as to whether Petitioner remembered Quinn telling him she did not love him. *See Bates*, 402 F.3d at 641. Third, the evidence against Petitioner was not dependent on Petitioner's response to the prosecutor's question regarding Quinn's alleged statement. *See id.* The prosecution presented other evidence and witness testimony linking Petitioner to the assault on Mr. Mack. Finally, the trial court instructed the jurors that the attorneys' questions were not evidence. (Trial Tr., vol. 5 at 32, Dec. 6, 2005). Jurors are presumed to follow a court's instructions to them, and therefore Petitioner cannot argue that he was prejudiced in this manner. *See Marsh*, 481 U.S. at 206.

The court concludes that the prosecutor's question was not improper and even if it were improper, the limited use of the question was not a flagrant violation of Petitioner's constitutional right to a fair trial. Petitioner is not entitled to relief on the basis of his claim of prosecutorial misconduct.

### C. Sentencing Guidelines

Petitioner's final claim for relief alleges that the trial court erred when it scored offense variables 7 and 10 of the Michigan sentencing guidelines. Petitioner contends that "[t]here simply was no demonstrable showing that there was . . . excessive brutality to warrant the assessment of the additional points." (Pet. at 21, Attach. C). Additionally, Petitioner claims that the trial court failed to provide substantial and compelling reasons for its departure from the sentencing guidelines.

The Michigan Court of Appeals rejected Petitioner's argument about offense variable 7, stating that

> OV 7 takes into account aggravated physical abuse. OV 7 can be scored at 50 points if a victim was "treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." [Mich. Comp. Laws §] 777.37. The trial court did not err when it scored OV 7 at 50 points. "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v. Hornsby*, 251 Mich. App. 462, 468; 650 N.W.2d 700 (2002). The evidence was sufficient to show that defendant acted with excessive brutality, and that his actions were designed to substantially increase Mack's fear and anxiety. [Mich. Comp. Laws §] 777.37. The evidence presented showed that Mack was shot three times. Defendant approached Mack at Mack's home and pointed a gun to his face. Defendant repeatedly stated, "I'm going to kill you,---." Although Mack tried to escape, defendant followed, keeping the gun pointed at Mack's face most of the time. Defendant shot Mack once in the palm, and continued to follow him with the gun pointed at his face. Mack constantly moved away, but defendant followed. Defendant then shot Mack in the calf and pointed the gun back at his face. Mack started throwing objects

> in his garage to deflect defendant from shooting him in the face. However, defendant continued to point the gun at Mack, and then shot him in the head.
>
> The foregoing evidence supported the trial court's conclusion that defendant acted with excessive brutality and wanted to increase Mack's fear and anxiety during the shooting. Because the evidence supported the trial court's scoring, we find no error.

*People v. Anderson*, 2007 WL 1791701, at *3. The Michigan Court of Appeals rejected Petitioner's other sentencing claims on the ground that Petitioner waived appellate review of the issues by failing to set forth any argument supporting those claims.

Respondent asserts that Petitioner's claim about OV 7 is not cognizable on habeas review and that Petitioner's claims about offense variable 10 and the upward departure from the sentencing guidelines are procedurally defaulted because Petitioner waived or abandoned those claims on direct appeal. The Court need not determine whether Petitioner procedurally defaulted part of his claim, because the entire claim challenges the state court's interpretation and application of its sentencing laws and guidelines. As such, the claim is not cognizable on federal habeas review. *Howard v. White*, 76 Fed. App'x. 52, 53 (6th Cir. 2003). Petitioner has not alleged a constitutional violation arising from the alleged error in sentencing, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Instead, when "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Because Petitioner has not alleged a constitutional violation, he has no right to relief on the basis of his sentencing claims.

### IV. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901 (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997), overruled in part on other grounds by *Lindh*, 521 U.S. at 320, ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the court concludes that reasonable jurists would not be able to debate the resolution of the issues because Petitioner has not shown any violation of his constitutional rights.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. # 1] is DENIED.

 S/Robert H. Cleland              
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 29, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 29, 2009, by electronic and/or ordinary mail.

 S/Lisa G. Wagner              
Case Manager and Deputy Clerk
(313) 234-5522